In the Matter of Ruth Whitehead Whaley, an Attorney, Respondent.

First Department, December 27, 1935.

*Einar Chrystie*, for the petitioner.

*Rorke & Kane*, for the respondent.

MARTIN, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York on June 1, 1925, at a term of the Appellate Division of the Supreme Court, First Department.

Charges of professional misconduct having been filed against her, the matter was referred to an official referee. The referee has now reported the respondent to have been guilty of the following acts:

In 1931 in the Court of General Sessions of the County of New York, the respondent was assigned to defend one Ethel Woodley who was charged with murder. Thereafter, for a good and valuable consideration, the respondent assigned to John W. Mitchell all her right, title and interest in the fee which was subsequently awarded to her as payment for her services. The assignment provided, in substance, that the respondent upon receipt of a check from the county of New York would indorse the same and deliver it to Mitchell in order that he might collect the proceeds thereof. In March, 1932, the respondent collected from the county of New York the sum of $250, the amount awarded to her as a fee for services rendered in the Woodley case. Instead of paying the same over to Mitchell in accordance with the terms of the assignment the respondent converted the entire amount to her own use and concealed from Mitchell the fact that she had received it. Thereafter Mitchell, having learned from other sources that the respondent had collected the fee, brought an action against her to recover the same. The respondent filed an answer in said action in which she asserted that her transaction with Mitchell was a usurious loan and that he was not entitled to recover any part of the money which she had collected. The answer was not verified and upon motion judgment was entered in favor of Mitchell for the full amount demanded. No part thereof has been paid.

In another matter the respondent acted as attorney for the administrator of the estate of Victoria Lucas, deceased. Arlington

Cornelius, an infant under the age of fourteen years, was entitled, as next of kin, to a share in the estate. On February 19, 1931, an order was entered in the Surrogate's Court, New York county, settling the accounts of the administrator of the estate. The order which was prepared and entered by the respondent as attorney for the administrator contained a provision to the effect that the sum of $291.89 was to be deposited by the administrator in the Emigrant Industrial Savings Bank to the joint credit of Vertuli Cornelius Williams, general guardian of Arlington Cornelius, and the guardian clerk of the Surrogate's Court. Thereafter the administrator gave the respondent $291.89 to be deposited in accordance with the terms of the order. The respondent, instead of complying with the terms of the order, converted the money to her own use and did not deposit any part thereof in the Emigrant Industrial Savings Bank until July 7, 1932, after she had been notified that charges had been filed against her and requested to appear before the petitioner's committee on grievances. In the meantime the respondent had falsely stated to the general guardian of Arlington Cornelius that the court had directed her to pay his share of the estate to the general guardian in installments and had paid to the general guardian three installments aggregating seventy-five dollars.

The respondent admittedly assigned all her interest in the fee referred to in the first charge and her subsequent receipt and use of the moneys was a conversion thereof. Her claim that in using the money she acted under the mental and physical stress of her father's last illness and with no thought of the assignment is negatived by her letter requesting the remittance of the money to her. It is inconceivable that the respondent, an attorney, in writing said letter and subsequently receiving and using the money, was without any recollection of the assignment.

With respect to the second charge, the respondent, in excuse for her failure to deposit the money, claimed that at the request of Mrs. Williams she loaned her seventy-five dollars to buy clothes and necessaries for the infant before the receipt by respondent of the money from the administrator and that the respondent informed Mrs. Williams, following the receipt of the money, that it could not be deposited until this loan had been repaid. This explanation finds no support in the record. The contrary is shown by the following excerpt from the report of the referee:

" In a word, respondent's straitened circumstances and slight acquaintance with Mrs. Williams make improbable respondent's testimony that she loaned Mrs. Williams $75.00, but even if the loan was made, as respondent testified, respondent's knowledge of law must have informed her that her attempt to repay herself out of the infant's money was unlawful.

" Respondent's conduct subsequent to the alleged loan moreover renders her testimony that it was made incredible. Thus according to respondent she parted with the written evidence that she had made the loan when she returned to Mrs. Williams the receipts which she says that Mrs. Williams gave to her when the payments were made. She ignored the letter written to her by the Guardian Clerk on October 9th, 1931, and in her telegram of April 5th, 1932, and letter of April 3rd, 1932, answering the letter of the attorney employed by Mrs. Williams, respondent did not state that she was awaiting repayment of a loan made by her to Mrs. Williams and that such repayment was necessary to place respondent in funds to make the required deposit in the Emigrant Industrial Savings Bank. But were respondent's version of the occurrence a true one, one would have expected her to inform Mrs. Williams' lawyer of the unrepaid loan of $75.00. It would, moreover, have been natural for the respondent in the letter which she wrote to the Assistant Attorney of the Grievance Committee of the Bar Association to have advanced by way of explanation the necessity for such a repayment as her reason for not having made the deposit in question.

" She says she did not deposit the money received by her from the administrator; she says she kept it in a small tin box; she says that the location of that box was shifted back and forth from her home to her office; she says that the box was left in her home when both she and her husband were away and when an acquaintance was left in occupancy, and finally it appears from the testimony that if there was cash in the box such cash was not used when on July 7, of 1934 payment was made by respondent's attorney of the amount in question. On the contrary, respondent's husband, the possessor of a key to the box, unaware that such sum was contained in it, and acting on instructions from the respondent sought and obtained a check from one of respondent's clients in the amount required to comply with the decree relating to the deposit of the infant's share in the Lucas estate.

" Each of the considerations mentioned renders in my opinion the respondent's testimony improbable, and taken collectively make it incredible.

" The above are the intrinsic considerations which lead me to discredit the respondent's version of the time when and the circumstances under which she paid money to Mrs. Williams and the reasons which she assigns for not causing the full amount of $291.89 to be deposited in the Emigrant Industrial Savings Bank.

" Her version of her transactions with Mrs. Williams stands contradicted by unimpeached testimony coming from a disinterested witness. Respondent's version of her transactions with Mrs.

Williams is refuted not merely by the spoken word but by the conduct of the latter. Mrs. Williams acted as one would expect a person to act who had been informed that the infant's share was not to be paid to her in a lump sum but from month to month to be used by her for the infant's support. In the course of four months she received four payments. All four payments were after the entry of the decree of February 21st, 1931. She looked for and expected monthly payments. She complained when she did not get them. She earnestly sought to obtain them. She employed counsel when they were not made, and when she discovered the form of the decree she complained to the Bar Association. Her conduct was anything but that of a borrower of money which belonged to another, who had promised to make repayment to the lender but who had breached her promise.

" Where one is charged with wrongdoing and the charge is well founded, the temptation to fabricate an exculpatory statement is great, and in my opinion the respondent, finding herself in such a position and so tempted, has yielded to the temptation."

The respondent should be suspended for one year, with leave to apply for reinstatement at the expiration of that term upon proof of her compliance with the conditions incorporated in the order.

MERRELL, McAVOY, O'MALLEY and UNTERMYER, JJ., concur.

Respondent suspended for one year.